1

```
 1          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3      UNITED STATES OF AMERICA,

 4        vs.
                                    Criminal No. 20-170
 5      RAEKWON DAC BLANKENSHIP,

 6                    Defendant.

 7
                          - - -
 8

 9      Transcript of proceedings on November 4, 2021 United States
        District Court, Pittsburgh, Pennsylvania, before Judge
10      Arthur J. Schwab.

11

12    APPEARANCES:

13      For the Government:    Jonathan Lusty, Esq.

14
        For the Defendant:    Kelvin Morris, Esq.
15

16      Court Reporter:       Marsia L. Balobeck

17

18

19

20

21

22

23

24
            Proceedings recorded by mechanical stenography;
25      transcript produced by computer-aided transcription.
```

1                     P R O C E E D I N G S

2        (Proceedings held over Zoom videoconferencing)

3        THE COURT:  Good morning.  This is the time and place

4 set for sentencing by Zoom videoconference in criminal number

5 20-00170.

6        For the government, who do we have on the

7 videoconference, please?

8        MR. LUSTY:  May it please the court, Jonathan Lusty

9 on behalf of the government.

10        THE COURT:  On behalf of the defendant, please?

11        MR. MORRIS:  May it please the court, Kelvin Morris

12 on behalf of Raekwon Blankenship.

13        THE COURT:  Welcome to both of you.  These

14 proceedings are being transcribed by our court reporter the

15 same as if everyone is physically in the courtroom.

16        Mr. Morris, is there anyone on the Zoom call, the

17 videoconference, that you wish to introduce?

18        MR. MORRIS:  Yes, Your Honor.  I believe Tiffany

19 Adams is the mother of Raekwon Blankenship.  She just logged

20 on.

21        THE COURT:  Welcome, ma'am.  Is there anybody else

22 with you, ma'am, Ms. Adams?  Anybody else with you?

23        THE DEFENDANT:  May I speak?

24        MR. MORRIS:  Raekwon, are you able to identify the

25 other person with your mom?

1          THE DEFENDANT:  Yes.  That's the mother of my

2     children.

3          MR. MORRIS:  Okay.  What's her name?

4          THE DEFENDANT:  Alexis Nolot.

5          THE COURT:  I just want to make it clear to everybody

6     on the call that recording, whether audio, video or both,

7     photographing, broadcasting or otherwise electronically or

8     digitally capturing the content of any civil or criminal court

9     proceeding is strictly prohibited, in other words, illegal.

10          Further, I instruct all parties to mute themselves

11     when they're not speaking except for the defendant, he may --

12     you don't need to mute yourself, sir.  Mr. Blankenship, you

13     may take your mask down since you're by yourself and move just

14     a little closer if you would for me, please, to the device so

15     I can see you a little better, please.  Yes, thank you very

16     much.

17          Would you kindly raise your right hand to be sworn,

18     please.

19          (RAEKWON DAC BLANKENSHIP was duly sworn)

20          THE COURT:  Do you understand that having been sworn,

21     your answers to my questions are subject to the penalties of

22     perjury or making a false declaration if you do not answer

23     truthfully?

24          THE DEFENDANT:  Yes sir.

25          THE COURT:  Court notes that due to the COVID-19

4

1        crisis and the miscellaneous orders entered by Chief Judge

2        Hornak at 20-MC-00466, that the court entered a scheduling

3        order on October 8, 2021, requiring the defendant to file a

4        motion seeking his sentence hearing to occur by video, if he

5        so chose.  And in the absence of such a motion, the sentencing

6        hearing would be conducted in-person.

7               On October 22, 2021, counsel for the defendant, by

8        motion at document number 60, sought to conduct this hearing

9        by videoconference, and therefore affirmed that the defendant

10       had waived his right to be physically present at this

11       sentencing hearing in the interest of justice.  The court

12       granted said motion by order of October 22, 2021.

13              Mr. Morris, is that an accurate summary of the

14       procedural history surrounding your client's request for a

15       videoconference sentencing hearing today?

16              MR. MORRIS:  It is, Your Honor.

17              THE COURT:  Mr. Blankenship, is it accurate that you

18       knowingly and voluntarily waive your right to be physically

19       present at this sentencing hearing today and that you ask this

20       court, by motion through your counsel, to conduct this hearing

21       by videoconference?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Is it still your intent to proceed by

24       videoconference today?

25              THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you understand that just because

2    you're appearing by videoconference, that this sentencing

3    proceeding is the same as if you were physically present in my

4    courtroom and that your right to be heard in open court

5    remains the same, and you'll be sentenced today just as if you

6    were physically present in my courtroom?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Upon due consideration of the written

9    motion filed by the defendant, through his counsel, on October

10   22, 2021, to which the government did not object, and the

11   questions to which defendant has been subjected here today,

12   the court finds the defendant has knowingly and voluntarily

13   waived his right to be physically present and has requested

14   this court to conduct his sentencing hearing by

15   videoconference today.  Therefore, the Court finds that

16   justice so requires that the court conduct this sentencing

17   hearing today by videoconference.  The Court will now proceed

18   with the merits of this sentencing, sir.

19         Mr. Blankenship, on June 15, 2021, you entered a plea

20   of guilty in my courtroom to a one-count -- to count one of a

21   one-count indictment at criminal number 20-00170, charging you

22   with obstruction of law enforcement during a civil disorder in

23   violation of Title 18 United States Code Sections 231(a)(3)

24   and 2.  Correct, sir?

25         THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  Following your guilty plea, I directed

2     the probation office to prepare a pre-sentence investigation

3     report, which I have reviewed, along with the addendum thereto

4     and the sentencing recommendation of the probation office.

5           Pursuant to the standing order of the Board of Judges

6     of this district, the court finds it's not appropriate to

7     disclose the recommendation of the probation office to the

8     parties nor to counsel; however, sir, in determining your

9     sentence, the court will not consider any matter that's not

10    been previously disclosed to you or your attorney.

11          The court notes it has received and reviewed the

12    government's sentencing memorandum, wherein the government

13    seeks a sentence of imprisonment within the applicable

14    guideline range to be followed by three years of supervised

15    release.  The court has also reviewed and reviewed defendant's

16    sentencing memorandum, including three program certificates

17    attached to said memorandum.  Additionally, I have received

18    yesterday an addendum thereto with another certificate or at

19    least statement of completion of a course by the defendant.

20          In defendant's sentencing memorandum, counsel seeks a

21    sentence of probation, which falls within the advisory

22    guideline sentencing range applicable to this defendant.

23          Mr. Blankenship, I did want to compliment you on the

24    programs that you have completed to date.  Obviously, you

25    still have a journey to complete in light of your conduct and

1    your plea of guilty.  But I didn't want to miss this

2    opportunity to congratulate you on your completion of the

3    certificates and your other work that you've done to improve

4    yourself to become a productive citizen.  So thank you for

5    your efforts in that regard, sir.

6              THE DEFENDANT:  Thank you, Your Honor.

7              THE COURT:  Mr. Morris, I've reviewed the

8    pre-sentence investigation report, addendum thereto -- strike

9    that.

10        Mr. Morris, have you reviewed the pre-sentence

11   investigation report, addendum thereto and discussed them with

12   your client?

13             MR. MORRIS:  Yes, Your Honor.

14             THE COURT:  Are there any errors in the pre-sentence

15   investigation report or addendum that you not previously

16   called to the court's attention?

17             MR. MORRIS:  No, Your Honor.

18             THE COURT:  Mr. Blankenship, have you reviewed the

19   pre-sentence investigation report, addendum thereto and other

20   matters and discussed them with your attorney?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Mr. Morris, is there any legal cause why

23   sentence should not be pronounced?

24             MR. MORRIS:  No, Your Honor.

25             THE COURT:  Is there anything else you would like to

8

1    say or the defendant would like to say or anybody else would

2    like to speak on his behalf?  Mr. Morris, you can control this

3    portion of the sentencing hearing, so people can speak as you

4    so direct.

5         MR. MORRIS:  Okay.  So, Your Honor, I've been

6    representing Raekwon now for over a year.  I met him shortly

7    after he was charged in the state case.  I initially

8    represented him there.

9         To see his growth and his development since I began

10   representation of him, it's been nothing less than phenomenal.

11   One thing I've struggled with in thinking about today's

12   sentencing is how to accurately reflect who he is as a person.

13   And how -- the challenge for me, Your Honor, is I have a

14   number of clients in front of Your Honor.

15        But Raekwon is just different, Your Honor.  He is a

16   phenomenal young man.  He is a pleasure to be around.  He

17   found himself in a difficult predicament on this day.  He

18   understands in hindsight -- and he's going to kind of talk to

19   Your Honor himself when he gets the moment -- about just how

20   he made some very poor decisions on that day.

21        He has been punished severely for those same

22   consequences in state court.  He's been sentenced to a term of

23   state imprisonment there.  I believe it's a two and a half to

24   five year sentence for the exact same conduct that brings us

25   to this instant case.

1    He has made really good use of his time.  He's been
2    very involved in his programs.  And I spoke to Mr. Sorels from
3    Pittsburgh Mercy recently and he was just gushing about
4    Raekwon.  The letter he provided that I supplied in the
5    addendum, some of the words he uses are:  Just excellent in
6    his program.  And how Raekwon was open with his expressions.
7    And his feedback and everything was just top notch.  I say
8    that Your Honor because I know sometimes -- well, I don't
9    know, but I can imagine, as a judge, you just want to know, is
10   this person getting it?  Do they fully understand and
11   appreciate the actions that they took on a particular day?
12       And in my estimation, Raekwon has more than got it.
13   He's been incarcerated since this time.  He's had a number of
14   time to think and reflect.  He and I, we have discussed the
15   discovery.  We went over it.  We talked about legal issues and
16   so forth.  And just his willingness and readiness to accept
17   responsibility for his actions, we're just asking that you
18   take that into consideration.
19       He's also been really pursuing his GED, Your Honor.
20   He's faced challenges while in jail because of COVID and so
21   forth in terms of allowing him to be able to fully pursue it
22   because of, I would imagine, numerous lockdowns and things
23   like that, that the jail has been unable to fully give him
24   those opportunities that he would have had if it were not for
25   COVID.

1        Nevertheless, he has studied, he has prepared.  So

2   right now, as he sits there, he's just waiting for a date when

3   they'll call him down so he can take his test.  But he is

4   prepared for it.  And maybe when he gets the opportunity he

5   will speak a little bit about that as well.

6        On the video, again, his mother Tiffany Adams.  I've

7   talked to her a number of times during his representation.

8   She is a very loving mother and very supportive, who Raekwon

9   has relied on during the pendency of these matters.

10       Ms. Adams, if there's something you would like to

11  tell the judge, this is your opportunity.  You do not have to,

12  but it's up to you if you would like to.

13       THE COURT:  You have to unmute, please.

14       MS. ADAMS:  Hello, how are you?  Yes, I'm Raekwon's

15  mother.

16       MR. MORRIS:  Ms. Adams, just for the record, please

17  state your name and spell your last name.

18       MS. ADAMS:  Tiffany Adams, A-D-A-M-S.  You hear me?

19       MR. MORRIS:  Yes.  And Ms. Adams, can you stay

20  stationary, not move around for us, please.  Okay.

21       MS ADAMS:  Raekwon is my son.  Raekwon Blankenship is

22  my son.  Very good kid growing up, spoiled.  I have five kids

23  altogether.  So I was a single mother.  It was hard raising

24  three boys and two girls.  Raekwon was always the funny

25  person, always making everyone laugh.  He has two daughters of

his own that miss him dearly.  We all miss him.  Haven't seen
him.

          And his younger brother had got shot.  And he's, you
know, paralyzed right now -- not paralyzed, but paraplegic.
He can't feel his legs.  Right now, we need Raekwon.  I know
you're not going to give him to us right now.  But just
Raekwon is strong, hard working when he is home, making
everyone laugh.  He's not a bad person at all.  He did some
dumb stuff that day.  Sometimes he don't think right.  He was
always in Mercy Behavior when he was younger for, you know,
ADHD.  Very hyper when he was a kid.  Didn't have no dad.

          He didn't mean to do what he did, and I know he's
sorry.  I talk to him every day.  He's always missing his
kids.  He needs to come home.  And I just want you to know he
is sorry.  He hates it where he's at now and he knows better
to go back there.  He definitely knows better.

          Your Honor, please just let him speak and let you see
how good of a person he really is.  If you knew him as a
person, you would know he likes to just work and take care of
home, be home.  He's a home body.  He never was in the
streets.  You know what I mean?  So for him -- that day he
went to go get shoes and they ended up going into the --
what's it?  The riot.  And then it got bad.  And it was really
a bad decision.  He should have just came straight home.  And
he's -- I know he's sorry.  I love you, Raekwon.

1          THE COURT:  Thank you, ma'am.

2          MR. MORRIS:  Thank you, Ms. Adams.  I'm going to let

3    Raekwon speak now and I'll say something briefly after that.

4          THE COURT:  I've got a couple of questions for you

5    just so I understand the interrelationship between the state

6    proceeding and this proceeding.

7          But Mr. Blankenship, you may speak, please.

8          THE DEFENDANT:  Yes, Your Honor.  I'd like to start

9    by saying I apologize for the actions that I partaken in on

10   that day.  I now know that my actions made me more of a

11   nuisance, instead of a voice, during that protest.  And that

12   the error of my ways weren't just -- they weren't justified.

13   And me being able to take the time during this incarceration

14   and being a part of my programs that I applied to, it helped

15   me have a better view on my actions.  And that I'd like to say

16   that I apologize for what I've done.  And that I'm waiting for

17   the day that I'm free so I can get back and be a productive

18   member of my society.  So I'm just waiting to apply everything

19   that I've been learning from my programs to what I can do for

20   when I go home for my kids.

21         THE COURT:  Are you satisfied with the service and

22   representation provided by your attorney?

23         THE DEFENDANT:  Yes, sir.  I mean yes, Your Honor.

24         THE COURT:  Has he done everything you've asked him

25   to do?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Is there anything he's done you think he

3    should not have done?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  I thank you again for your statement.  I

6    appreciate that it's -- you've now made a decision, hopefully

7    genuinely, to turn your life around and become productive.

8    But you've got to finish your state and whatever your federal

9    sentence is going to be.  So that's a delay that's caused by

10   the consequences of your conduct.  But I appreciate the

11   progress that you've made today.  And I hope you'll find a

12   trade or some other work that will help you financially and to

13   be productive.  So it sounds like you've figured it out and

14   you have a very good counsel that I'm sure has helped you

15   along the way.  So I appreciate and thank you for your

16   statement.  Mr. Morris, anything else you would like to say?

17         MR. MORRIS:  Yes, Your Honor.  Just for clarification

18   purposes, again the sentencing in state court, the charges

19   were different.  Mr. Lusty and I, we had a number of

20   conversations regarding this case.  I explained the

21   differences to Raekwon regarding the elements of the state

22   case versus the elements of the federal case.  So it has been

23   discussed with the government as well as Raekwon.

24         So when I was saying that the sentence -- he's

25   already been sentenced there.  I'm not suggesting that he's

1    being charged -- it's a unique case, Your Honor, in that it's

2    the same set of facts.  So that's what I'm saying.  But I just

3    want to be clear that Raekwon, it's been discussed with him.

4    He understands what the legal issues were.  We chose not to

5    file any motions and pursue that avenue.  He wanted to accept

6    responsibility and take this route.

7              THE COURT:  How long is his state sentence, please?

8              MR. MORRIS:  Your Honor, I was looking at UJS,

9    Unified Judicial System, for Pennsylvania state.  I saw, it's,

10   I believe, it's two and a half to five years.

11             THE COURT:  And how long has he been incarcerated in

12   state?

13             MR. MORRIS:  He's been incarcerated since shortly

14   after this incident.  Raekwon, what was the date that you went

15   in?

16             THE DEFENDANT:  I went in June 23rd, so it's been

17   about 15 months, maybe 16.

18             THE COURT:  All right.  And Mr. Morris, what's your

19   understanding of -- will he complete the two and a half years

20   or more in Allegheny County Jail?  Or once I pronounce a

21   sentence, he'll then go back into state custody and serve the

22   rest of his time in a federal -- in a state facility?

23             MR. MORRIS:  Well, Your Honor, I haven't spoken to

24   anyone about this.  But typically the sentence -- well, always

25   the sentence of two and a half to five years, that's a state

1    imprisonment sentence.  So he will be sent to one of the state

2    correctional institutions, I imagine, once this case is

3    concluded and once the federal writ has been completed.  But

4    he will not be at the Allegheny County Jail much longer.

5              THE COURT:  And he will -- I mean all the time that

6    he has served to date has been state time.  Correct?

7              MR. MORRIS:  Your Honor, I believe I received a

8    message from Mr. Howard recently about the timing.  I believe

9    Raekwon may have just a short period of time in federal

10   custody, but the majority of it is in state custody, correct.

11             THE COURT:  Mr. Howard is the United States probation

12   officer, for the record.

13             MR. MORRIS:  I guess, Your Honor, just in conclusion

14   for me, I just want to request a sentence of probation would

15   be implemented.  It is within the advisory guidelines.

16   Considering he has been severely punished in state court, I

17   would just ask Your Honor to take that into consideration and

18   issue a sentence of probation.

19             THE COURT:  Mr. Lusty, on behalf of the government?

20             MR. LUSTY:  Your Honor, the government has nothing to

21   add.  We filed a sentencing memorandum, asking for a guideline

22   sentence.  We would defer to the court and just ask -- that's

23   our position.

24             THE COURT:  Mr. Morris, back to you.  What determines

25   whether he, in the state court system, serves the two and a

16

1    half or five years or somewhere up to the five years?

2          MR. MORRIS:  So at the two and a half year point, at

3    his minimum, he will be eligible for parole.

4          THE COURT:  And then he applies for that or state

5    court counsel applies for that?

6          MR. MORRIS:  I believe it's automatic.  They kind of

7    docket it -- not docket, but they mark their calendars within

8    the state system to make sure when that when minimum date is

9    approaching that the parole board hears the case and a

10   decision is made from there.

11         THE COURT:  And all of his certificates and the

12   letter that was filed yesterday, does his state court attorney

13   have that information?

14         MR. MORRIS:  Your Honor, I am not sure.  I tried to

15   have contact a number of times with the state court counsel.

16   Communications are very poor.  There was little to no response

17   with that.

18         THE COURT:  Okay.  Well, will you take what efforts

19   you need to take to get those documents into his state court

20   file somehow so that it's before the state parole board at the

21   appropriate time, which appears to be about 15 months from

22   today?

23         MR. MORRIS:  Yes, Your Honor.  I will do that.

24         THE COURT:  Mr. Howard, do you have any suggestions

25   on how to make sure that happens or is that outside your

1    wheelhouse?

2            PROBATION OFFICER:  Yeah, Your Honor.  I'm not sure

3    how we can get that to the Pennsylvania Department of

4    Corrections.  I'm not sure.

5            THE COURT:  Mr. Morris, you'll figure out a way to do

6    that?

7            MR. MORRIS:  Yes, Your Honor.  I will.

8            THE COURT:  The United States sentencing guidelines

9    are advisory only.  The court has discretion to deviate or

10   vary from the guidelines after considering the factors set

11   forth in Title 18 United States Code Section 3553(a).  The

12   court must also rule on any motions for departure or requests

13   for variance.

14           Mr. Morris, I presume your request for a probation

15   sentence is not a motion for departure or request for variance

16   since it is within the guidelines.  Correct?

17           MR. MORRIS:  That is correct, Your Honor.

18           THE COURT:  Defendant's offense level is eight,

19   criminal history category I.  Accordingly, the advisory

20   guideline range is zero to six months imprisonment, one to

21   five years probation, supervised release of one to three

22   years, a fine of $2,000 to $20,000 and a special assessment of

23   $100.

24           On behalf of the government, did I accurately state

25   the offense level, criminal history category and the advisory

1   guideline range?

2           MR. LUSTY:  Yes, Your Honor.

3           THE COURT:  Mr. Morris, you agree?

4           MR. MORRIS:  Yes, Your Honor.

5           THE COURT:  Sir, your sentence is as follows:

6   Pursuant to the Sentencing Reform Act of 1984, it is the

7   judgment of this court that the defendant is sentenced to time

8   served to be released forthwith, followed by three years of

9   supervised release with the first six months to be served in a

10  residential reentry center.

11          And on behalf of the probation office, did I

12  accurately state the correct words necessary to achieve what

13  my goal is?

14          PROBATION OFFICER:  Yes, Your Honor.

15          THE COURT:  While on supervised release, defendant

16  shall not commit another federal, state or local crime, shall

17  comply with the standard conditions that have been adopted by

18  this court and the following additional conditions:

19          One, defendant shall reside for a period of six

20  months in the residential reentry center to commence as soon

21  as arrangements can be made and finalized by the probation

22  office and shall observe the rules of said facility.

23          Two, defendant shall not illegally possess a

24  controlled substance.  Supervised release must be revoked for

25  possession of a controlled substance.

1          Three, defendant shall not possess a firearm,

2    ammunition, destructive device or other dangerous weapon.

3    Supervised release must be revoked for possession of a

4    firearm, ammunition, destructive device or other dangerous

5    weapon.

6          Four, defendant shall participate in a program of

7    testing, and if necessary, treatment for substance abuse, said

8    program approved by the probation officer until such time

9    defendant is released from the program by the probation

10   officer and/or the court.  Further, the defendant shall be

11   required to contribute to the cost of services for any such

12   treatment in an amount to be determined by the probation

13   officer, but not to exceed actual costs.  Defendant shall

14   submit to one drug urinalysis within 15 days after of being

15   placed on supervision, and at least two periodic tests

16   thereafter.

17         Five, defendant shall not purchase, possess and/or

18   use any substance or device designed to alter in any way or

19   substitute defendant's urine specimen for drug testing.  In

20   addition, defendant shall not purchase, possess and/or use any

21   device designed to be used for the submission of a third

22   party's urine specimen.

23         Six, defendant shall not use or possess alcohol.

24         Seven, defendant shall participate in a mental health

25   assessment and/or treatment program approved by the probation

1    officer until such time as defendant is released from the

2    program by the probation officer and/or the court.  Defendant

3    shall be required to contribute to the cost of the services

4    for any such treatment in an amount to be determined by the

5    probation officer.  These costs shall not exceed the actual

6    costs of the service.  The probation office is authorized to

7    release defendant's pre-sentence investigation report to the

8    treatment provider or providers, if so requested.

9         Eight, defendant shall participate in a program or

10   course of study aimed at improving his educational level or

11   employment skills, for example obtaining a GED, participating

12   or completing a vocational training program or participating

13   in a literacy program as approved by the probation officer.

14        Nine, defendant shall cooperate in the collection of

15   DNA as directed by the probation officer.  In addition, within

16   72 hours of his release from state custody, he should report

17   in person to the United States probation office in the Western

18   District of Pennsylvania to be placed on supervision.

19        And I would ask the probation office, whoever is

20   assigned to him, upon his release from state custody, that

21   they work with the defendant and Mr. Morris to find him,

22   during that six-month period, some sort of training, maybe in

23   a vocation such as carpentry or something along that line.

24   Obviously, if he wants some other program, that's fine, or

25   college that's also fine.  But obviously there's a desperate

1    need for people who are trained with those kinds of skills.

2    My dad was a carpenter, sir.  It was a good and productive job

3    for him.  So that's why I have sort of a passion for

4    vocational job training.  But I, in no way, wish to limit

5    whatever you believe is best for you to become a more

6    productive citizen.

7              Nine, I can't remember whether I read this or not,

8    but defendant shall cooperate in the collection of DNA as

9    directed by the probation officer.  Court also imposes a

10    mandatory special assessment of $100 constituting a $100

11    special assessment at each count, to which the defendant has

12    pled guilty, which shall be paid to the Clerk of Court

13    forthwith.  Based upon the financial information contained in

14    the pre-sentence investigation report, the court finds that

15    the defendant does not have the ability to pay a fine and

16    therefore waives imposition of any fine.

17              Sir, the reason for your sentence is as follows:  The

18    court considers time served and three years supervised

19    release, with the first six months to be served at a

20    residential reentry center, to be sufficient, but no greater

21    than necessary, to comply with the goals of sentencing as set

22    forth in Title 18 United States Code Section 3553(a)(2), which

23    are to reflect the seriousness of this offense, to promote

24    respect for the law and to provide for just punishment for

25    this offense, to afford adequate deterrence to criminal

1    conduct, protect the public from further crimes by this

2    defendant, and to provide the defendant with needed

3    educational or vocational training, medical care or other

4    correctional treatment in a most effective manner.

5           The court has considered all the sentencing factors

6    as set forth in Title 18 United States Code Section 3553(a),

7    including those presented by the government and defense, and

8    as set forth in the pre-sentence investigation report and

9    addendum thereto.

10          Furthermore, the court has considered the following:

11   First, the circumstances and nature of this offense.

12   Defendant has pled guilty to obstruction of law enforcement

13   during a civil disorder in violation of Title 18 United States

14   Code Section 231(a)(3) and Section 2 for his engaging in

15   serious criminal conduct that is further addressed in the

16   pre-sentence investigation report.  The court incorporates by

17   reference Paragraphs 10 through 15 of the pre-sentence

18   investigation report as part of the basis upon which this

19   court bases its sentence.

20          By the way of summary only:  On May 30, 2020 during a

21   civil disorder in Downtown Pittsburgh, defendant poked a

22   police horse multiple times with a replica of a stop sign as

23   five mounted police officers were attempting to leave the area

24   where projectiles were being thrown at the officers.

25   Defendant then approached an occupied police van and threw the

1    same sign into the front windshield of said van.  Defendant

2    also kicked and struck two police vehicles as they drove away

3    from the area.  Finally, the defendant assisted a group of

4    individuals in the destruction of an unmarked police vehicle

5    by jumping on the hood and roof of the vehicle.

6            Secondly, the court has considered defendant's

7    criminal, family and social history and personal

8    characteristics as further outlined in the pre-sentence

9    investigation report, at Paragraphs 29 through 54, which the

10    court incorporates by reference as part of the basis for this

11    sentence.

12            Defendant is approximately 25 years old, single, has

13    two children.  This not the defendant's first criminal

14    offense.  He has a prior criminal conviction for an offense

15    involving a firearm, for which defendant was sentenced to one

16    year probation.

17            Defendant also has a sentence that we heard today was

18    approximately two and a half to five -- two and a half years

19    to five years of imprisonment in state custody as a result of

20    the conduct on May 30, 2020.

21            Defendant has a history alcohol abuse and mental

22    health concerns.  That's why the court ordered conditions

23    relating to mental health treatment and substance abuse

24    testing and treatment, if necessary, and the prohibition

25    against the use of alcohol.

1        Defendant has an 11th grade education.  He is working

2   on his GED, according to what counsel has said.  And the court

3   has provided for his getting a GED and other training as part

4   of this federal court sentence.

5        Third, the court has considered the kinds of

6   sentences available for this offense.  And the sentencing

7   guideline range under the advisory guidelines and applicable

8   policy statements adopted by the sentencing commission.  The

9   court also considered the need to avoid unwarranted sentencing

10  disparities among defendants who have been found guilty of

11  similar conduct.

12        The court was unwilling to give the defendant a

13  straight sentence of probation, because to do so would create

14  sentencing disparities with other defendants who have similar

15  records and have found guilty of similar conduct, including

16  those I've already sentenced to date.

17        On behalf of the government, does my statement of

18  reasons adequately address all objections, concerns and issues

19  raised?

20        MR. LUSTY:  Yes, Your Honor.

21        THE COURT:  Are there any other sentencing factors

22  under Section 3553(a) that the court has failed to address?

23        MR. LUSTY:  No, Your Honor.

24        THE COURT:  Mr. Morris, on behalf of the defendant,

25  does my statement of reasons adequately address all

1    objections, concerns and issues raised?

2              MR. MORRIS:  Yes, Your Honor.

3              THE COURT:  Are there any other sentencing factors

4    under Section 3553(a) that the court has failed to address?

5              MR. MORRIS:  No, Your Honor.

6              THE COURT:  Mr. Morris, have you had an opportunity

7    to talk to the defendant about his right to appeal?

8              MR. MORRIS:  Yes, Your Honor.

9              THE COURT:  Mr. Blankenship, except as otherwise

10   waived in your plea agreement you have the right to appeal

11   from the orders of this court, judgment of guilty and/or from

12   the sentence imposed.  You have a right to have a lawyer

13   represent you on appeal at no cost to you.  If you cannot

14   afford them, certified copies of the necessary transcripts

15   will be furnished at the expense of the United States

16   government.  If you appeal, the notice of appeal must be filed

17   within 14 days of today, otherwise you will lose your right to

18   appeal.  If you request, the Clerk of Court will immediately

19   prepare and file a notice of appeal on your behalf.

20             Do you wish to appeal, sir?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Do you understand if you change your

23   mind, decide to appeal, any notice of appeal must be filed

24   within 14 days of today, otherwise you will lose your right to

25   appeal?  Understand?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And if you change your mind, decide to

3     appeal, you'll use your current counsel to file such a notice,

4     correct?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Mr. Howard, on behalf of the probation

7     office, is there any language I need about remanding his

8     custody either to the marshals or transfer to the Bureau of

9     Prisons, or do I just let it play out since he's in state

10    court jurisdiction?  And once he serves his state court

11    sentence, within 72 hours, he needs to report to the United

12    States Probation Office in the Western District of

13    Pennsylvania.

14         PROBATION OFFICER:  Your Honor, I don't think you

15    need to add any additional language other than what was

16    already stated in the imposition of sentence.

17         THE COURT:  Mr. Morris, anything else you would like

18    to put on the record?

19         MR. MORRIS:  Nothing further, Your Honor.  Thank you.

20         THE COURT:  Mr. Lusty?

21         MR. LUSTY:  No, Your Honor.  Thank you.

22         THE COURT:  Okay.  What we're going to do in light of

23    the sentence and the difficulty of trying to communicate with

24    Mr. Blankenship, since he's in custody, I'm going to ask my

25    deputy clerk to keep the call up for ten minutes.  And

1    Mr. Blankenship, Mr. Morris and Ms. Adams will stay on the

2    call.  And the rest of us are going to be dropped off the

3    call.  And the call will just stop at a time.  So you've got

4    to use your time wisely.  What time is it, Linda?

5              THE DEPUTY CLERK:  It's 10:14.

6              THE COURT:  So you've got ten minutes.  Because I

7    have another matter to do Zoom at 10:30.  Ms. Adams, thank you

8    for your statement on behalf of your son.  He's fortunate to

9    have someone staying close to him and encouraging him.

10              Mr. Blankenship, I wish you the best.  I appreciate

11   the statement that you made, and just encourage you to find a

12   trade or some other education that makes you productive so you

13   can take care of your family.  And as I said, follow your

14   mother's advice.  A wise man always follows his mother's

15   advise.  Understand?

16              THE DEFENDANT:  Thank you.

17              THE COURT:  I adjourn this hearing.

18              C E R T I F I C A T E

19              I, MARSIA L. BALOBECK, certify that the foregoing
     is a correct transcript from the record of proceedings in the
20   above-entitled case.

21

22    \s\ Marsia L. Balobeck          10/27/2022
     MARSIA L. BALOBECK                Date of Certification
23   Official Court Reporter

24

25